Cliff J. WILSON, Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF the PEN-SION TRUST FUND FOR OPERATING ENGINEERS AND PENSION TRUST FUND FOR OPERATING ENGI-NEERS, Defendant-Appellee.

No. 77–1266.

United States Court of Appeals,
Ninth Circuit.

Nov. 23, 1977.

Rehearing and Rehearing In Banc
Denied Jan. 24, 1978.

Bruce K. Miller, Washington, D. C., argued, for plaintiff-appellant Wilson.

Thomas E. Stanton, Jr., San Francisco, Cal., argued, for defendant-appellee Operating Eng. Pension Trust Fund.

Before WALLACE and SNEED, Circuit Judges, and BOLDT *, District Judge.

SNEED, Circuit Judge:

Appellant Wilson brought this action to compel payment to him by appellee Trust Fund of certain disability benefits to which he asserts he is entitled. His claim is that the Trust Fund's break-in-employment rule, as applied to him and others who might be similarly situated, is arbitrary and unreasonable in that it operates to deprive him of certain Pension Credits attributable to employment prior to January 1, 1958, the effective date of the creation of the Trust Fund. Without these credits, Wilson is not entitled to the benefits he seeks. Alterna-

* Hon. George H. Boldt, Senior United States District Judge for the Western District of Washington, sitting by designation.

tively, Wilson claimed that he worked enough in employment qualified for credit to make the break-in-employment rule inapplicable. The district court found that the facts did not support this contention, and its finding is not clearly erroneous. Therefore, we are concerned here only with Wilson's assertion that, as here applied, the break-in-employment rule is arbitrary and unreasonable.

■ Our jurisdiction rests on Section 302(e) of the Taft-Hartley Act, 29 U.S.C. § 186(e), as interpreted by this court in *Alvares v. Erickson*, 514 F.2d 156 (9th Cir. 1975) cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975) and *Burroughs v. Bd. of Trustees of Pension Trust, Etc.*, 542 F.2d 1128 (9th Cir. 1976) cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). Section 302(e) jurisdiction is limited to so-called "structural" deficiencies and does not extend to day-to-day fiduciary administration of welfare and pension funds. Wilson's claim comfortably fits within the "structural" deficiency category, and no serious question with respect to our jurisdiction exists in this case. *See Lugo v. Employees Retirement Fund*, 388 F.Supp. 997 (E.D.N.Y.1975), *aff'd*, 529 F.2d 251 (2d Cir. 1976) cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Insley v. Joyce*, 330 F.Supp. 1228 (N.D.Ill.1971).

The district court held that the break-in-employment rule, as applied to Wilson, was not unreasonable, and that its enforcement was not arbitrary. We agree and affirm the district court's judgment.

### I.

The break-in-employment rule of this particular Trust Fund was previously before this court in *Burroughs v. Bd. of Trustees of Pension Trust, Etc., supra*. We there held that the "rule is not by itself arbitrary and capricious . . .." 542 F.2d at 1131. Our concern here, as already indicated, is whether, as applied to Wilson, the rule is unreasonable and arbitrary.

To understand the force of Wilson's contention it is necessary to set forth the pertinent parts of the Rules and Regulations of the Trust Fund. Article C, Section 7 provides in part that

"A Covered Employee shall be entitled to retire on a disability pension if he was or becomes totally disabled at a time when:
(a) He has attained at least age 50 but has not attained age 65 and has at least 10 years of Pension Credit without a break in employment as defined in Article D, Section 5; or
(b) he has not attained age 65 and has at least 15 years of Pension Credit, without a break in employment as defined in Article D, Section 5; and
(c) if he meets the requirements in Subsections (a) or (b) above, he has also received two quarters of Future Service Credit . . .." [1]

The definition set forth in Article D, Section 5 provides "it shall be considered a break in employment and a Covered Employee's previously accumulated Pension Credit shall be cancelled if after the January 1 coinciding with or next following his Contribution Date he fails to earn one quarter of Future Service Credit in a period of three consecutive calendar years . . .."

Wilson's Contribution Date is January 1, 1958, and as of that date he had accumulated in excess of 10 years of Pension Credits. These Credits were not vested, however, because Wilson's year of birth was 1912 and such Credits did not vest, pursuant to Article D, Section 6, until the Covered Employee had reached age 55 and had accumulated at least 10 years Pension Credits. Being less than 55 years of age, Wilson's Pension Credits remained subject to the break-in-employment rule. It, therefore, was necessary for Wilson "to earn one quarter of Future Service Credit in a period of three consecutive calendar years" to establish that, as of 1970, the year in which Wilson at age 58 applied for disability benefits, he met the requirements of Article C, Section 7.

---

1. To earn one quarter of future service credit an employee must work a minimum of 350 hours in covered employment during a calendar year. Article D, Section 3.

Wilson easily established that he had accumulated at least one quarter of Future Service Credits during each three-year period between 1958 and 1970 except the two initial periods, 1958 through 1960 and 1961 through 1963. The Trust Fund's records revealed the following with respect to these two periods:

| Year | Hours Reported | Pension Credit |
|------|----------------|----------------|
| 1958 | 8 | 0 |
| 1959 | 87 | 0 |
| 1960 | 0 | 0 |
| 1961 | 0 | 0 |
| 1962 | 341 | 0 |
| 1963 | 0 | 0 |

On the basis of these records, which the district court found were accurate, and which finding we accept because not clearly erroneous, a break in employment occurred during these two periods. This deprives Wilson of his disability benefits, because he failed to meet the requirements of Article C, Section 7.

## II.

Wilson, aside from insisting that the trial court's findings of fact should be overturned, contends (1) that his break in employment was "involuntary," within the meaning of that term as employed by this court in *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1971), and (2) that to apply the break-in-employment rule to Wilson and others similarly situated is unreasonable and arbitrary.

## A.

■ We cannot agree that Wilson's break in employment was "involuntary." In *Lee v. Nesbitt, supra*, we held that it was unreasonable to apply the break-in-employment rule when the employee's failure to work was due to the unavailability of covered employment. Nothing of that sort existed here. Wilson's failure to conform to the break-in-employment rule was not attributable to an absence of employment. During the two periods in question, Wilson did in fact work but he voluntarily chose to do so in a manner that did not constitute covered employment. Under these circumstances we hold that Wilson "voluntarily left covered employment" and that, under the teaching of *Giler v. Board of Sheet Metal Workers of So. Cal.*, 509 F.2d 848 (9th Cir. 1974), it was not unreasonable or arbitrary for the Trust Fund to treat Wilson as having failed to conform to the break-in-employment rule. The most favorable interpretation that can be placed on Wilson's employment during the periods in question is that he mistakenly assumed that the amount of his covered employment was sufficient to prevent a break in employment. We hold that such a mistake does not cause the break in employment to be "involuntary."

## B.

■ Wilson's fundamental argument is that the application of the break-in-employment rule to him is unreasonable and arbitrary because such application serves none of the purposes for which the rule was designed. This argument commences by pointing out that the district court assumed that *Burroughs v. Bd. of Trustees of Pension Trust, Etc., supra*, would excuse the 1958 through 1960 break in employment because of the absence of notice to Wilson of the existence of the rule and that the 1961 through 1963 break exists only because of a failure to work in covered employment an additional nine hours during 1962. The argument then observes that Wilson at his Contribution Date had 16¼ years of uninterrupted work as operating engineer and that between 1964 and 1969 he earned the two years of future service credit which also is required to qualify for the disability benefits he seeks. The purposes of the break-in-employment rule, the argument continues, are to preclude transient workers from qualifying for benefits and to promote, through cancellation of pension credits, the actuarial soundness of the Trust Fund. To permit Wilson to qualify for the benefits he seeks will not frustrate these purposes; his work record demonstrates he is not a transient worker, and it has not been shown by the Trustees that his disqualification promotes the actuarial soundness of the fund.

This argument has considerable force. We acknowledge that Wilson is entitled to the *Burroughs* excuse with respect to the 1958 through 1960 period, and that his failure to work an additional nine hours in 1962 caused the break in employment. However, we refuse to reform the structure of the Trust Fund on the basis of speculations regarding the purposes of the break-in-employment rule. It may well be, as Wilson insists, that the actuaries who designed the Fund never considered the possibility of relieving persons such as Wilson from the consequences of the break-in-employment rule. This provides no justification for our intervention almost two decades after the Fund's inception to redesign it in a manner that conforms to our imprecise notions of actuarial soundness. Wilson's failure to qualify for the disability benefits he seeks undoubtedly makes funds available for other beneficiaries of the Fund and the consequence is unmistakably in accordance with the terms of the Fund. We cannot say that a Fund so operating is unreasonable and arbitrary. Rules in many settings frequently overreach in order to secure their objectives with certainty. This does not in all circumstances makes them unreasonable or arbitrary. One must weigh the extent of the overreaching against the importance of certainty. We have done this and find the overreaching, if such it be, in this case tolerable and neither unreasonable nor arbitrary.

The existence of the Employee Retirement Income Security Act of 1974 (ERISA) strengthens our conclusion because, although it limited the extent to which breaks in service could prevent vesting of benefits, 29 U.S.C. § 1053(b), these limitations were not made applicable to the plan years involved in this case. 29 U.S.C. § 1061(a). Congress has not sought retroactively to modify the Fund before us as it relates to Wilson and persons similarly situated. We shall not do what Congress, after full deliberation, also has not done.

AFFIRMED.