628 F.2d 537
 105 L.R.R.M. (BNA) 2868, 58 A.L.R.Fed. 157,
89 Lab.Cas. P 12,325,
2 Employee Benefits Ca 1777
 Augustine PONCE et al., Plaintiffs-Appellants,
v.
CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA
et al., Defendants-Appellees.
Tom GILCHRIST, Plaintiff-Appellant,
v.
CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA
et al., Defendants-Appellees.
 Nos. 79-3109, 79-3274.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1980.
Decided Sept. 22, 1980.
 
 Bruce K. Miller, Los Angeles, Cal., for plaintiffs-appellants.
 Kenneth J. Sackman, Beverly Hills, Cal., Lionel Richman, Los Angeles, Cal., argued, for defendants-appellees; James Wolf, Los Angeles, Cal., on brief.
 Appeals from the United States District Court for the Central District of California.
 Before PECK*, ANDERSON and FERGUSON, Circuit Judges.
 PECK, Circuit Judge.
 
 
 1
 The two cases now before the Court have been consolidated for disposition. The plaintiffs in these cases challenge as "arbitrary and capricious" certain vesting requirements (specifically, the "15-year credited service" requirement and the "break-in-service" rule) of the Construction Laborers Pension Trust for Southern California. Plaintiffs brought these appeals after the district court had entered summary judgments in favor of defendants.
 
 INTRODUCTION
 
 2
 The Construction Laborers Pension Trust for Southern California (Trust; Pension Trust) is an irrevocable trust fund that was established on June 15, 1962, pursuant to an agreement and declaration of trust among the Southern California District Council of Laborers, certain affiliated locals, and the contractors with whom the District Council engaged in collective bargaining. For the purposes of this appeal, the Trust is governed by the requirements of section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). In general terms, that section requires that a trust fund be operated for the "sole and exclusive benefit" of employees of contributing employers. The declared purpose of the Trust is the payment of retirement and disability pension benefits to employees of employers who are parties to the Trust and to the dependents of those employees. The Trust derives its revenues exclusively from the contributions that are made by each member employer for each hour that is worked by his employees. In other words, the Trust is exclusively employer-funded.
 
 
 3
 By resolution dated October 16, 1962, the Board of Trustees of the Pension Trust was empowered to promulgate rules and regulations to govern the distribution of pension benefits that are to be paid by the Trust. On December 27, 1962, the Board of Trustees, acting in accordance with its authority, adopted a pension plan which set out various requirements for eligibility to receive pension benefits. At all times, from the initial adoption of the pension plan in December 1962 through the close of calendar year 1975, the eligibility requirements for benefits under the Trust included the following two conditions:
 
 
 4
 (a) The 15-Year Credited Service Requirement.
 
 
 5
 The minimum period of work in employment covered by the Plan required to be completed by an employee claiming any kind of pension is 15 years. In addition, the minimum period of employment required to secure a vested or a nonforfeitable right to a deferred pension benefit is similarly 15 years;
 
 
 6
 (b) The Break-in-Service Rule.
 
 
 7
 Any employee who has accumulated less than 15 years of employment covered by the Plan suffers a complete cancellation of credit for such employment (subject to certain exceptions not at issue in the present action) in the event that he fails to complete at least 300 hours of work in covered employment in each of two consecutive years.
 
 The Ponce Case
 
 8
 Plaintiffs in the Ponce case are eighteen retired or disabled construction workers who completed at least ten years of employment that are recognized as credited service under the Pension Trust. (Each plaintiff completed his last period of work in covered employment before January 1, 1976.) Plaintiffs applied to the Trust for either normal retirement pensions, early retirement pensions, or disability pensions; however, all of their applications were denied by the defendant Board of Trustees. The sole basis for such denials was the Trustees' conclusion that plaintiffs had failed to satisfy the Trust's 15-year minimum service requirement, either because plaintiffs had failed to complete 15 years of covered employment or because some portion of plaintiffs' employment was not recognized due to the operation of the break in service rule.
 
 
 9
 The first contention of the Ponce plaintiffs focuses on the 1970 decision of the Board of Trustees to increase the monthly benefit level of the Trust from $13.75 per month for each year of credited service to $32.40 per month for each year of credited service. In essence, plaintiffs contend that this decision of the Trustees to more than double the monthly benefits was arbitrary and capricious, and that the Trustees should have disbursed the pension funds by including more plan participants in the class of beneficiaries. According to plaintiffs, the Trustees could have realized such inclusion by lowering the number of years of credited service that is required for pension vesting. In their second contention, the Ponce plaintiffs argue that the break-in-service rule is not related to any legitimate trust purpose because it applies to a negligible percentage of otherwise eligible plan participants.
 
 The Gilchrist Case
 
 10
 Plaintiff Thomas Gilchrist was a construction laborer who had worked in Southern California from 1942 through 1973, at which time he became disabled. From 1952 through 1973, Gilchrist's work was continuous and produced 13 and 8/12 years of service that was credited toward his entitlement to a pension from the Pension Trust. In addition to such credited service, Gilchrist performed an additional 2 and 10/12 years of construction work during the period from 1942 to 1949. In February of 1972, Gilchrist applied to the Pension Trust for an early retirement pension; however, his application was denied by the Board of Trustees on the ground that Gilchrist had failed to satisfy the 15-year minimum service requirement. The Trustees concluded that Gilchrist's 2 and 10/12 years of service between 1942 and 1949 could not be considered for purposes of the minimum service requirement because Gilchrist had failed to earn any pension credit during the years 1950 and 1951. Under the terms of the Trust's break-in-service rule, the absence of pension credit for two consecutive years required automatic cancellation of any previous credits Gilchrist might have otherwise earned. Such cancellation left Gilchrist with only 13 and 8/12 years of credited service, a period that did not satisfy the 15-year minimum service requirement. Gilchrist attacks as arbitrary and capricious the application of the break-in-service rule to his construction work during 1942 to 1949. (As indicated above, the break in service rule was adopted by the Board of Trustees in 1962.) Gilchrist contends that the application of the break-in-service rule to his work record from 1942 to 1951, a period when neither he nor any other worker had notice of the rule's requirements, was arbitrary, capricious, and not rationally related to any legitimate trust purpose.
 
 THE STANDARD OF REVIEW
 
 11
 Initially, we note that the mandatory vesting provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., are not applicable to either of the cases now on appeal. In regard to the contentions of the Ponce plaintiffs, the provisions of ERISA protect only the pension rights of workers who were working at the beginning of calendar year 1976, the effective date of the Act. In other words, Congress chose not to make ERISA's minimum eligibility standards retroactive. See 29 U.S.C. § 1061(b) (2). See, e. g., Wilson v. Board of Trustees, 564 F.2d 1299, 1302 (9th Cir. 1977). As previously noted, each of the plaintiffs in Ponce completed his last period of work in covered employment before January 1, 1976. In regard to the contentions of plaintiff Gilchrist, ERISA does not require pension plans to give credit for service that was completed prior to the inception of the plan. Further, ERISA specifically permits a pension plan to give effect to a break in service that occurred prior to January 1, 1976. See 29 U.S.C. § 1053(b)(1)(C); 29 U.S.C. § 1053(b)(1)(F). See, e. g., Wilson, supra, 564 F.2d at 1302.
 
 
 12
 Although the provisions of ERISA are not applicable to the present cases, the actions of the defendant Board of Trustees are nonetheless subject to judicial review pursuant to the provisions of section 302(c)(5) of the Taft-Hartley Act. Section 302 of that Act, 29 U.S.C. § 186, prohibits employers and their representatives from making payments of money "or other thing of value" to employee representatives; however, section 302(c)(5) of the Act sets forth an exception to this general prohibition in relation to employee welfare or pension plans. Section 302(c)(5) provides that the provisions of Section 302 are not applicable,
 
 
 13
 with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents).
 
 
 14
 29 U.S.C. § 186(c)(5) (emphasis added). Under section 302(e) of the Act, 29 U.S.C. § 186(e), the federal district courts have jurisdiction "to restrain violations of this section."
 
 
 15
 The language of section 302(c)(5) (trust funds shall be operated ". . . for the sole and exclusive benefit of the employees . . ."), and the standard of judicial review to which such language gives rise, have been the subject of interpretation. Many courts have drawn a distinction between "structural" defects in a trust fund, on the one hand, and questions involving "the day-to-day fiduciary administration" of a trust fund on the other. These courts have concluded that the "sole and exclusive benefit" language of section 302(c)(5) allows judicial review only of so-called "structural" defects. See Wilson v. Board of Trustees, 564 F.2d 1299, 1300 (9th Cir. 1977); Burroughs v. Board of Trustees, 542 F.2d 1128, 1130 (9th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); Alvares v. Erickson, 514 F.2d 156, 165 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); Mosley v. National Maritime Union Pension, 438 F.Supp. 413, 418 (E.D.N.Y.1977); Insley v. Joyce, 330 F.Supp. 1228, 1234 (N.D.Ill.1971). Other courts have suggested that allegations of criminal intent or willfulness are a prerequisite to jurisdiction under the section. Compare Bowers v. Ulpiano Casal, Inc., 393 F.2d 421, 425 (1st Cir. 1968) with Alvares v. Erickson, supra. Despite these at-times conflicting interpretations of the language of section 302(c)(5), it is now settled, at least in this Circuit, that jurisdiction exists under the section if a complaint properly alleges that pension trustees, acting under the authority of the trust fund, "arbitrarily and capriciously" denied pensions to employees. Such arbitrary and capricious conduct is deemed not to be "for the sole and exclusive benefit of the employees," and is therefore structurally deficient. See Tomlin v. Board of Trustees, 586 F.2d 148, 149 (9th Cir. 1978); Wilson, supra; Burroughs, supra; Giler v. Board of Sheet Metal Workers of Southern California, 509 F.2d 848, 849 (9th Cir. 1975); Lee v. Nesbitt, 453 F.2d 1309, 1311 (9th Cir. 1972); Roark v. Lewis, 401 F.2d 425, 426 (D.C.Cir. 1968); Mosley, supra.
 
 
 16
 Consistent with this limited standard of review under section 302(c)(5), courts have given wide discretion to trustees, "short of plainly unjust measures . . . ," to decide questions relating to pension eligibility. Sailer v. Retirement Fund Trust, 599 F.2d 913, 914 (9th Cir. 1979). Generally speaking, trustees are knowledgeable of the details of a trust fund (both its purpose and its operation), and thus they are in a position to make prudent judgments concerning participant eligibility. Courts are extremely reluctant to substitute their judgments for the judgments of the trustees, and will do so only if the actions of the trustees are not grounded on any reasonable basis. The Court of Appeals for the District of Columbia stated the following in Roark v. Lewis, supra, 401 F.2d 425, 429:
 
 
 17
 The court is fully cognizant of the internal pressures exerted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size or the number of the slices. There is no camouflaged design on the part of the court to second-guess the discretionary judgments of the trustees . . . . It is for the trustees, not judges, to choose between various reasonable alternatives.
 
 
 18
 See also, Tomlin, supra; Giler, supra; Lee, supra.
 
 THE PONCE CASE
 The Break-in-Service Rule
 
 19
 Plaintiffs in the Ponce case attack the break in service rule on the ground that the rule serves no legitimate trust purpose because it does not apply to a significantly large number of otherwise eligible plan participants. In other words, plaintiffs reason that the rule, which denies pension benefits to only a few plan participants, does not substantially contribute to the actuarial soundness of the Trust. In the light of this reasoning, plaintiffs conclude that the rule should therefore not be applied to any of the plan participants. We find this reasoning of plaintiffs to be flawed in a number of respects. First, even given the already limited standard of review under Section 302(c) (5), courts will be less concerned about a rule that excludes a low percentage of plan participants than about a rule that excludes a high percentage of such participants. The protections of section 302(c)(5) do not sound in equal protection principles which grant redress to a few individuals who have been unfairly singled out of a group to bear a particular burden. Rather, the protections of the section are primarily designed to insure that the trustees of a pension plan will award benefits to "as many intended employees as is economically possible." Gaydosh v. Lewis, 410 F.2d 262, 266 (D.C.Cir.1969). Accordingly, assuming a legitimate trust purpose and assuming an absence of bad faith on the part of the trustees, a vesting requirement that excludes only a few eligible plan participants will not be at odds with the basic goal of Section 302(c)(5).
 
 
 20
 Second, the fact that a vesting requirement applies to a low percentage of otherwise eligible employees does not in any way tend to prove that the requirement is arbitrary and capricious. Most vesting requirements are adopted in order to encourage employees to conform their work patterns to the legitimate expectations of employers. Specifically, a break-in-service rule is intended to promote an employer's legitimate interest in the continuous employment of his employees. See, e. g., Wilson v. Board of Trustees, supra, 564 F.2d 1299, 1301-1302. Thus, the fact that only a few employees are affected by a break-in-service rule tends to prove only (if it proves anything) that the rule is successful in achieving the legitimate goal of continuous employment. Finally, case law indicates that the actuarial soundness of a pension plan is influenced to an appreciable degree by the exclusion of even one otherwise eligible plan participant. For example, in Wilson v. Board of Trustees, supra, 564 F.2d 1299, 1302, this Circuit held that the denial of benefits to one plan participant "undoubtedly (made) funds available for other beneficiaries of the Fund . . . ."
 
 
 21
 We have previously concluded that a "break-in-(service) rule is not by itself arbitrary and capricious . . . ." Burroughs v. Board of Trustees, supra, 542 F.2d 1128, 1131, See also Wilson v. Board of Trustees, supra, 564 F.2d 1299, 1300. We now conclude that such rule is not rendered arbitrary and capricious solely because in its application it excludes a negligible percentage of otherwise eligible employees. The district court correctly granted summary judgment to defendants, denying the contentions of the Ponce plaintiffs that relate to the break in service rule.
 
 15-Year Credited Service Requirement
 
 22
 Plaintiffs in the Ponce case make a more substantial argument as to the 15- year credited service requirement. In support of their contention that the Trust Fund excludes an excessively high percentage of plan participants, plaintiffs point to the fact that from the inception of the Trust in 1962 through 1974 less than four percent of the plan participants qualified for and began receiving pension benefits. (Defendants do not dispute this percentage.) Plaintiffs further allege that this exclusion rate compares unfavorably to the "Interim Report of Activities of Private Welfare and Pension Plan Study," Subcommittee on Labor, U. S. Senate Committee on Labor and Public Welfare, 1971. That survey indicates that, on a national average, the percentage of workers who qualify for benefits from pension plans that require eleven years or more of work as a condition of eligibility is eight percent.
 
 
 23
 This Court will not engage in judicial line drawing for the purpose of setting precise guidelines for trustees to use in determining what is an acceptable rate of participant-exclusion. Such a course would improperly interfere with the discretion that the courts have placed in the hands of the trustees. See, e. g., Sailer v. Retirement Fund Trust, supra, 599 F.2d 913, 914; Roark v. Lewis, supra, 401 F.2d 425, 429. However, the primary purpose of section 302(c)(5) is to insure that pension benefits are awarded to "as many intended employees as is economically possible." Gaydosh v. Lewis, supra, 410 F.2d 262, 266. Further, this Court has held in Burroughs v. Board of Trustees, supra, 542 F.2d 1128, 1131 that:
 
 
 24
 A structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose behind their exclusion, thus failing to satisfy the requirement that the fund shall be for the "sole and exclusive benefit" of all employees. See Insley v. Joyce, 330 F.Supp. 1228, 1233 (D.C.Ill.1971).
 
 
 25
 Accordingly, we now hold that when a vesting requirement is shown to exclude an unusually high percentage of plan participants, the burden shifts to the trustees to show the reasonableness of the requirement. Cf. Roark v. Lewis, supra, 401 F.2d 425, 428.
 
 
 26
 In the context of our present review of the district court's grant of summary judgment in favor of defendants, we find that the record does not indicate that defendants are entitled to such judgment as a matter of law. Defendants have not conclusively carried their burden of proof and established a sufficient reason for their decision to maintain the unusually high exclusion rate that is suggested by plaintiffs' evidence. The trustees have argued to this Court that their 1970 decision to more than double the then-existing level of benefits was reasonably grounded on their belief that the increase in benefits would serve to eliminate the high drop-out rate among construction workers. However, we find this justification to be speculative, at least as far as it is supported by the present record. There is evidence to suggest that most construction workers leave their jobs after only relatively brief periods of employment. Work in the construction industry is at times scarce due to the cyclical and seasonal fluctuations that occur within the industry. Further, construction work is strenuous, and the incidence of construction-related accidents is high. In the light of these factors, it is speculative whether an increase in pension benefits will provide any meaningful incentive to construction workers to continue in their employment for a period that is as long as 15 years. The trustees, who shoulder the burden of proof, have not produced evidence to document the reasonableness of their alleged belief that a significant increase in pension benefits would help reduce the high drop-out rate among construction workers.
 
 
 27
 Further, although an increase in benefits to the upper range of the national average may arguably provide some incentive to employees to continue their participation in a pension plan, an additional increase in benefits to a point well beyond the upper range of the national average will do little, if anything, to further strengthen the incentive. In short, increasing pension benefits in the hope of enticing employees to continue in their employment reaches a point of diminishing returns. As noted above, the primary purpose of section 302(c)(5) is to insure that pension benefits are awarded to as many employees as is economically possible. At some point, it is arbitrary and capricious for trustees to keep increasing pension benefits in the hope of encouraging employees to remain in the pension plan in future years. At this point, trustees should reduce the vesting requirements and immediately and directly bring more employees into the class of eligible participants. Such result can be achieved by lowering the number of years of credited service that is required for vesting.
 
 
 28
 In reaching our conclusion as to the credited service requirement, we note that the precise question before the Court does not pertain simply to the reasonableness of a 15-year service requirement that excludes 96 percent of the plan participants. Rather, the question now before us pertains to the reasonableness of such requirement, in the light of the fact that in 1970 the trustees chose to maintain the 15-year requirement and to more than double the then-existing level of benefits. Trustees can distribute accumulated pension funds either by increasing the benefit levels or by increasing the number of beneficiaries. It is true that, on its face, a 15-year credited service requirement is valid. See, e. g., Tomlin v. Board of Trustees, 586 F.2d 148 (9th Cir. 1978). It is also true that trustees have some legitimate interest in making pension benefits attractive to covered employees in order to encourage their continued participation. However, the reasonableness of maintaining an exclusionary requirement diminishes as the level of benefits to the included beneficiaries increases. In other words, absent a substantial and verifiable justification, it is arbitrary and capricious for trustees both to maintain a vesting requirement with a high exclusion rate and at the same time to pay an unusually high level of benefits.
 
 
 29
 The parties in the Ponce case dispute at considerable length the question of whether the pension trustees in 1970 raised the level of benefits to an extraordinarily high level. For example, plaintiffs contend that after the 1970 increase some beneficiaries of the Trust received benefits that, when combined with their social security benefits, exceeded 140 percent of their preretirement monthly wages. Such evidence of plaintiffs raises factual questions that are central to the resolution of this case. We vacate the district court's summary judgment in favor of defendants regarding the 15-year credited service requirement. On remand, the district court must determine, after factual findings are made, whether it was reasonable for the trustees to maintain a vesting requirement that excluded 96 percent of the plan participants. The reasonableness of such action must be determined in the light of the level of benefits that the trustees chose to pay in 1970. If the court concludes that, given the high level of benefits, the exclusionary impact of the 15-year credited service requirement was unreasonable, the court should then determine if any of the plaintiffs herein would have been entitled to pensions if the trustees had reasonably modified the credited service requirement in 1970. In reaching its conclusions, the district court need not consider the impact that inflation has had on the benefit level over the past decade. The fact that high inflation over an extended period may reduce an exorbitant level of benefits to a reasonable level of benefits does not mitigate the injury that is sustained by an excluded participant in the year that the unreasonable benefits are declared.
 
 THE GILCHRIST CASE
 
 30
 Plaintiff Gilchrist attacks as arbitrary and capricious the application of the break-in-service rule to his work record from 1942 to 1951, a period when neither he nor any other worker had notice of the rule's requirements. (Of course, the reason that plaintiff did not have notice of the rule's requirements during 1942 through 1951 is that the rule was not adopted until 1962.) Plaintiff cites the case of Burroughs v. Board of Trustees, supra, 542 F.2d 1128 (9th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); however, plaintiff's reliance on the Burroughs case is misplaced. In Burroughs, this Court prohibited the application of a break in service rule to a participating employee's service that had been performed prior to a pension plan's inception. Therein, the Court concluded that the trustees had acted in a fundamentally unfair manner when they had failed to provide the employee with notice after the plan's inception of the break-in-service rule. In other words, in Burroughs, the employee's past service had been performed prior to the inception of the pension plan, but his break in service had occurred after the inception of the plan when the employee would have had a present ability to conform his work pattern to the rule's requirements, if he had known them. Plaintiff argues that Burroughs requires that plan participants have notice of all eligibility rules, even those rules that apply to service that is entirely performed before the plan is adopted. If plaintiff's theory was accepted, there could be no rules applied to past service credit because there could be no notice of what rules might be adopted by a pension plan not yet in existence.
 
 CONCLUSION
 
 31
 In regard to the Ponce case, the judgment of the district court in favor of defendants is affirmed in part and vacated in part. The case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 32
 In regard to the Gilchrist case, the judgment of the district court in favor of defendants is affirmed.
 
 
 33
 J. BLAINE ANDERSON, Circuit Judge, concurring:
 
 
 34
 I agree that we must affirm Gilchrist, and reverse in part with respect to Ponce. However, the language on page 11, commencing at line 7 from the top, "In other words, absent a substantial and verifiable justification, it is arbitrary and capricious for trustees both to maintain a vesting requirement with a high exclusion rate and at the same time to pay an unusually high level of benefits." causes me some concern since it is capable of being read too restrictively. I submit it should not be so read. The trustees are dealing with a unique laboring force and are entitled to consider the many factors which render it unique when making their judgments in carrying out their trust responsibilities. The language I have quoted should not be read to foreclose, on remand, consideration of facts and circumstances pertinent or unique to this particular trust, the industry, and its working force. To so read it would be unwarranted, and would impermissibly restrict the broad discretion properly vested in Taft-Hartley Act pension trustees. See, e. g., Tomlin (Streeter) v. Board of Trustees of Construction Laborers, 586 F.2d 148, 151 (9th Cir. 1978).
 
 
 35
 Upon the understanding that the language "absent a substantial and verifiable justification" should not be read and applied restrictively in further proceedings below, I concur in Judge Peck's opinion.
 
 
 
 *
 The Honorable John W. Peck, Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation