Ellis M. HURN, Plaintiff-Appellant,

v.

RETIREMENT FUND TRUST OF the PLUMBING, HEATING AND PIPING INDUSTRY OF SOUTHERN CALIFORNIA, Defendant-Appellee.

No. 82–5032.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1982.

Decided April 4, 1983.

Henry R. Fenton, Los Angeles, Cal., for plaintiff-appellant.

Richard J. Davis, Davis, Frommer & Jesinger, Los Angeles, Cal., for defendant-appellee.

Before SNEED and ALARCON, Circuit Judges, and CORDOVA *, District Judge.

SNEED, Circuit Judge:

Appellant Ellis Hurn is a retired member of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry. His case has been before us once before. In his first complaint he alleged that the Retirement Fund Trust's suspension of his pension benefits violated the vesting provisions in section 203(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1053(a). The district court granted the Fund summary judgment on that claim because Hurn did not meet the normal retirement age of sixty-five, a prerequisite for ERISA nonforfeitability. On appeal we agreed with the court on section 203(a)'s inapplicability, but remanded the case to allow Hurn to file an

* Honorable Valdemar A. Cordova, United States District Judge for the District of Arizona, sitting by designation.

amended complaint under section 302(c)(5) of the Labor Management Relations (Taft-Hartley), Act, 29 U.S.C. § 186(c)(5). *Hurn v. Retirement Fund Trust,* 648 F.2d 1252, 1254–55 (9th Cir.1981). Hurn's second complaint fared no better. On cross-motions for summary judgment, the district court again granted the Fund's motion. We again reverse.

## I.

## STATEMENT OF FACTS AND ISSUES

Hurn began to receive an early retirement service pension in June 1975. He was fifty-eight years old, and had accumulated twenty-five years of credit under the Fund's service retirement plan. On December 1, 1975, he accepted nomination for the presidency of his local, a nonpaying office. He alleges that the local's incumbent business manager, whose opponent Hurn supported, threatened to suspend his pension if he ran for office. He ran anyway, and although he was not elected, the Fund's trustees voted to suspend his benefits from February 1, 1976 to the beginning of October.

Hurn's dispute with the Fund is over the legality of the suspension. Fund Rule 21 dictated suspension for anyone engaging in "employment or activity," including "labor relations," in the building and construction industry. The Fund argues that the Rule encompassed nominees for union office. Hurn, of course, claims that the Rule did not. He also argues that a rule suspending nominees' pension benefits would be arbitrary and capricious, in violation of the fiduciary duties imposed on Fund trustees by section 302(c)(5). Furthermore, he claims that the trustees failed to provide adequate notice of the Rule's content and discriminated in its application, both also in violation of section 302(c)(5).

We shall address only one of these issues, *viz.,* whether Rule 21 as interpreted and applied by the Fund trustees was arbitrary and capricious and thus in violation of section 302(c)(5). Inasmuch as we hold that it was, it is not necessary for us to address Hurn's other arguments. We will assume, *arguendo,* that Rule 21 encompassed nominees for union office and that the Fund gave adequate notice of its contents and did not discriminate in its application.

## II.

## REVIEW PURSUANT TO SECTION 302(c)(5)

◼ The Taft-Hartley Act governs the trustees' discretion in structuring pension rules. Section 302(c)(5) requires trustees to act "for the sole and exclusive benefit of the employees."[1] This section imposes on trustees the burden of fiduciary care, as defined on traditional equitable principles. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Each trustee bears an "unwavering duty of complete loyalty" to employees, *id.* at 329, 101 S.Ct. at 2794, and this duty "to trust beneficiaries must overcome any loyalty to the interest of the party that appointed him," *id.* at 334, 101 S.Ct. at 2796.

---

1. Section 302(a), 29 U.S.C. § 186(a), prohibits employers from making payments to employee representatives, labor organizations, employees if in excess of normal compensation and designed to influence collective bargaining, or officers or employees of a labor organization if with the intent of influencing their actions. Section 302(c)(5) creates an exception for payments for employee representatives:

    [W]ith respect to money or other thing of value paid to a trust fund established by such representative, *for the sole and exclusive benefit of the employees of such employer,*\* ...: *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, ...; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon ...; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities.

    \* (emphasis added).

A. *The Standard of Review for Rules Established in Collective Bargaining Is Inapplicable*

■ We acknowledge our holding would be otherwise had the details of the Fund been worked out in collective bargaining. The Supreme Court held in *UMW Health & Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), that benefits determined in collective bargaining can be overturned only if in violation of other federal law. *See id.* at 575–76, 102 S.Ct. at 1234. Variations in benefits in such plans are presumed to be the product of a give and take in which all parties, including the beneficiaries, are represented. The Fund insists that its rules are eligible for protection under *Robinson*. We do not agree.

In *Robinson* the Court distinguished provisions that had been the " 'subject of explicit, informed and intense bargaining,' " *id.* at 569, 102 S.Ct. at 1231 (quoting the district court's unpublished opinion), from those established by trustees with " 'full authority' to determine eligibility requirements and benefit levels," *id.* at 573, 102 S.Ct. at 1233. The union and mine operators in *Robinson* had reached an impasse during collective bargaining over rules governing widows' health benefits, and the final provisions were a compromise designed to end a strike. *See id.* at 567, 102 S.Ct. at 1230. There was every reason to believe that each side had explored the advantages and disadvantages of the alternatives before agreeing on the rules finally adopted. The Court, in shutting off inquiry into the reasonableness of these provisions, noted that "[a]s long as such conditions do not violate federal law or policy, they are enti-tled to the same respect as any other provision in a collective bargaining agreement." *Id.* at 575, 102 S.Ct. at 1234.

Nothing in the record suggests that Rule 21 was established in collective bargaining. The trustees enjoyed the initiative on changes in the Fund. The formulation and pre-drafting debate over all rules, including Amendment No. 36–A, which amended Rule 21 to make it embrace "employment or activity" including "labor relations," was their responsibility. Rules did have to be ratified by union and employer representatives before they could be adopted by the trustees. Independent approval by representatives of each side, however, is not the equivalent of collective bargaining. *Robinson*, therefore, is inapplicable.[2]

B. *The Arbitrary and Capricious Standard of Review for Discretionary Rules*

■ Our authority to review Rule 21's scheme of distribution, as interpreted by the trustees, is limited to what can be implied from section 302(c)(5)'s mandate that trust rules be in the "sole and exclusive benefit" of employees.[3] To implement section 302(c)(5)'s mandate while respecting the trustees' need for discretion in conceiving a plan to maximize employee welfare, we have traditionally reviewed trust rules to ensure that they are not arbitrary and capricious, unsupported by substantial evidence, instituted in bad faith, or erroneous on a question of law. *See Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir.1977) (endorsing standard in *Danti v. Lewis*, 312 F.2d 345 (D.C.Cir.1962)); *see, e.g., Elser v. I.A.M. National Pension Fund*, 684 F.2d 648, 654

---

**2.** The trust agreement in *Robinson* read as if it gave the trustees some discretionary authority, *see* 455 U.S. at 574 n. 13, 102 S.Ct. at 1233 n. 13, but the Court interpreted it to require them to adhere to the collective bargaining contract "unless modification is required to comply with applicable federal law," *id.* The specific rules contested in *Robinson* were the product of collective bargaining, not trustee initiative, and we understand *Robinson* to apply only in such situations.

**3.** Authority for review under § 302(c)(5) is well established in this circuit, even if its basis remains implicit. In the lead case of *Alvares v. Erickson*, 514 F.2d 156 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975), we noted the inconclusiveness of the legislative history of § 302(c)(5) if looked to as a guide to our jurisdiction. *Id.* at 164. We took jurisdiction not from our inherent equitable power but from the " 'penumbra of express statutory mandate' " of section 302(c)(5). 514 F.2d at 166, quoting *Lugo v. Employees Retirement Fund*, 366 F.Supp. 99, 103 (E.D.N.Y.1973).

(9th Cir.1982); *Miranda v. Audia,* 681 F.2d 1124, 1125 (9th Cir.1982); *Brug v. Pension Plan,* 669 F.2d 570, 573–74 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 135, 74 L.Ed.2d 116 (1982). Under the "structural defect" test, an employee can show violation of these standards by establishing the exclusion of a large number of employees from benefits for no apparent reason. *Burroughs v. Board of Trustees,* 542 F.2d 1128, 1131 (9th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). The trustees will still prevail if they show a reasonable purpose for their rule. *See Miranda,* 681 F.2d at 1125–27; *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 543–45 (9th Cir.1980).[4]

■ Violations of the trustees' fiduciary duties may be easiest to see when a group of employees is deprived of benefits, but the structural defect test is not limited to group violations. The test extends to rules that arbitrarily exclude individual employees from their chance at benefits. Thus we have invalidated break-in-employment rules that retroactively cancel past service credit, *Burroughs,* 542 F.2d 1131; *see also Brug,* 669 F.2d at 575–76 (recision of amendment making clerical employees beneficiaries arbitrary and capricious as applied to employee otherwise eligible for benefits at time of recision), or divest otherwise vested benefits because of an involuntary break in employment, *Lee v. Nesbitt,* 453 F.2d 1309, 1311–12 (9th Cir.1972). Rules that deny individual employees benefits for reasons irrational on their face are also inconsistent with the trustees' obligation to administer the trust in the "sole and exclusive benefit" of all employees. The trustees must advance some reason for such rules to surmount the arbitrary and capricious barrier.

### C. Application of the Arbitrary and Capricious Standard

■ The Fund has advanced no such reason. It presents the Rule as "part of an overall regulatory program designed to meet a series of problems and issues." It does not identify these problems and issues, but it claims that they are similar to those that justify suspension of the benefits of employed service retirees or retirees who seek employment by registering in a hiring hall or taking out a state contractor's license. These latter provisions, of course, are not arbitrary. The Fund has a clear interest in not paying benefits to early retirees employed in the industry; they already receive a full income, and the Fund does not want them to compete for jobs with younger workers ineligible for benefits. And it is not arbitrary to cast Rule 21 so as to reach those seeking to return to work. Not all rules that reach somewhat beyond their mark are for that reason unlawful. *See Wilson v. Board of Trustees,* 564 F.2d 1299, 1302 (9th Cir.1977).

The Fund's interest in protecting the jobs of young workers and its contribution base, however, does not require it to penalize retirees who run for the union's presidency. The union does not pay its president or contribute to his retirement benefits, so Hurn would not affect anyone's job, wage, or benefits by winning office. The Fund therefore had no reason to discourage his candidacy. Nor was Hurn any less needy than before running for office. He needed his benefits, if anything, more than before because he now had the expense of campaigning to add to his other expenses. His need for benefits during his campaign would not have been reduced even were the presidency a paying office.

---

4. The results of the break-in-employment rules illustrate the broad latitude this approach accords trustees' policy selections and the rules they adopt to meet their goals. *See, e.g., Sailer v. Retirement Fund Trust,* 599 F.2d 913, 914–15 (9th Cir.1979) (employee whose only disqualification from benefits was failure to file notice requesting waiver of break-in-employment rule not entitled to benefits); *Wilson v. Board of Trustees,* 564 F.2d 1299, 1301–02 (9th Cir.1977) (employee with over sixteen years of employment at contribution date, who would have qualified then if older, disqualified twelve years later because nine hours short of break-in-employment minimum); *Giler v. Board of Trustees,* 509 F.2d 848, 849 (9th Cir.1975) (per curiam) (employee with seventeen years in pension credit at age fifty ineligible for benefit at age fifty-five, although only fifteen years of credit required, because of break in employment after accumulation of seventeen years of credit).

We also find unsupported on this record the view that competition from retirees might deter other union members from seeking office. Employed workers who run for office would not lose their wages in the process, so they should not fear competition from service retirees. The only certain effect of suspension is to add to the disincentives retirees like Hurn have for seeking union office. We express no opinion on the lawfulness of a complete bar of a retiree from holding union office. *See* 29 C.F.R. § 451.41(a) (1982). Even if such a bar were lawful the disincentive Rule 21 is said to embody would remain arbitrary because it would bar only those who could not afford to lose their benefits. Those who could afford that loss could continue to seek and to hold union office. Such discrimination would be arbitrary. Therefore, we find the provision arbitrary and capricious under section 302(c)(5).

### D. *ERISA Preemption and the Taft-Hartley Act*

Finally, there is no merit to the Fund's objection that we cannot reach the Taft-Hartley violation because we have already validated the pension plan under ERISA's "conflicting" standards. That is not true. All that we decided in our earlier opinion was that Hurn did not meet the age requirement for the nonforfeitability standards in ERISA section 203(a). 648 F.2d at 1253–54. Section 203(a) primarily effectuates only one of Congress' goals, that of establishing "minimum standards of plan design with respect to the vesting of plan benefits." *See* H.R.Rep. No. 533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4640.[5] We did not authorize the trustees to behave arbitrarily

in dispensing nonvested benefits. Had we thought otherwise we would not have remanded the case to the district court to allow Hurn to pursue his section 302(c)(5) claim.[6]

The Fund's broader argument that ERISA preempts the Taft-Hartley Act on pension issues is equally untenable. Both the Supreme Court and this court have recognized that the Taft-Hartley provisions parallel the ERISA provisions and that trustees must meet the requirements of each. *See UMW Health & Retirement Funds v. Robinson,* 455 U.S. 562, 575, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982); *Bricklayers' Health & Welfare Trust Fund v. Brick Masons' Health & Welfare Trust Fund,* 656 F.2d 1387, 1392 (9th Cir.1981); *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433, 438 (9th Cir.1980); *cf. NLRB v. Amax Coal Co.,* 453 U.S. 322, 332–34, 101 S.Ct. 2789, 2795–96, 69 L.Ed.2d 672 (1981) (using "language and legislative history of § 302(c)(5) and ERISA" to define trustees' duties). Where Congress intended ERISA to repeal or supersede other laws, state or federal, it said so. *See* 29 U.S.C. §§ 1031(a), 1144(a). But it said nothing about section 302(c)(5). ERISA was not to affect any federal laws not specifically mentioned, *id.* § 1144(d), and it does not preempt Hurn's Taft-Hartley claim.

Summary judgment for appellee is reversed, and the case is remanded to the district court for entry of judgment consistent with this disposition.

REVERSED and REMANDED.

---

**5.** For a summary of ERISA's other provisions, see *The Pension Reform Act of 1974: Brave New World of Retirement Security,* 27 U.Fla.L. Rev. 1044, 1064–79 (1979).

**6.** The district court in its second opinion advanced the view the Fund takes here, that "[T]he Rules and Regulations of Defendant Fund in issue in this case have been held not to violate the provisions of [ERISA] in *Hurn v. Retirement Fund, etc.,* 648 F.2d 1252 (9th Cir.

1981)." The court construed our earlier opinion too broadly. We only held that Rule 21 did not violate § 203(a). We said nothing of other ERISA provisions, most notably § 404, 29 U.S.C. § 1104, the analogue to § 302(c)(5). We do not discuss the applicability of § 404, which took effect on January 1, 1975, *id.* § 1114(a), and carries its own limitations period, *id.* § 1113, because Hurn did not plead a cause of action under it.