774 F.2d 1401
 120 L.R.R.M. (BNA) 3055, 6 Employee Benefits Ca 2468
 Augustine PONCE, et al. Plaintiffs-Appellees,
v.
CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA,
et al., Defendants-Appellants.
Lee W. HARRISON, et al., Plaintiffs-Appellees,
v.
CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA,
et al. Defendants-Appellants.
 No. 84-6216.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 3, 1985.
Decided Oct. 25, 1985.
 
 Cox, Castle & Nicholson, James P. Watson, Charles E. Noneman, Los Angeles, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, SNEED and SKOPIL, Circuit Judges.
 
 PER CURIAM
 
 1
 Trustees of the Construction Laborers Pension Trust (CLPT) appeal from a district court judgment, 582 F.Supp. 1310, that operation of its trust violates Sec. 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5) (1982). We affirm.
 
 
 2
 The pension plan at issue in this action was put into effect in 1962 by the trustees of the California Laborers Pension Trust. When adopted, the plan included a requirement that to be eligible for pension benefits, laborers must have worked in the construction industry for a minimum of 15 credited years. In 1976, following passage of the Employee Retirement Income Security Act (ERISA), this minimum was changed to 10 years. See 29 U.S.C. Sec. 1053(a)(2)(A) (1982). In 1970, the trustees had considered changing their vesting requirement to 10 years, but had decided instead to increase the benefits to those who qualified under the 15-year standard.
 
 
 3
 Plaintiffs in this action are construction laborers who last worked as laborers in Southern California before 1976. Each worked for at least 10 years, but not 15 years. Because the minimum vesting requirement of ERISA is not retroactive, see 29 U.S.C. Sec. 1061(b)(2) (1982), plaintiffs are ineligible to receive pension benefits under the (pre-ERISA) CLPT 15-year standard. In 1976, plaintiffs filed a complaint in federal district court, alleging that the 15-year requirement was arbitrary and capricious and thus in violation of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5) (1982). Section 186(c)(5) sets forth the terms under which pension trusts can be established and administered.
 
 
 4
 The district court granted summary judgment for CLPT in 1979. On appeal, we held that summary judgment was inappropriate and remanded for trial on the question of reasonableness of the 15-year requirement, in light of the fact that its effect was to deny pension plan participation to 96% of the potentially covered construction laborers. Ponce v. Construction Laborers Pension Trust, 628 F.2d 537, 543-45 (9th Cir.1980) (Ponce I ). On remand, the case was consolidated with a class action based on the same allegations. The liability and damage issues were bifurcated and the liability phase was tried to a judge. In 1984 the judge found that CLPT had violated Sec. 186(c)(5). Ponce v. Construction Laborers Pension Trust, 582 F.Supp. 1310 (C.D.Cal.1984) (Ponce II ). This interlocutory appeal ensued.
 
 I. EXCLUSION RATE
 
 5
 When this court reversed summary judgment for CLPT in Ponce I, we declined to dictate to CLPT a proper exclusion percentage but suggested that there was a point at which an exclusion percentage was too high; i.e., the point at which the trustees could not justify as reasonable the long vesting requirement. 628 F.2d at 543. We said: "when a vesting requirement is shown to exclude an unusually high percentage of plan participants, the burden shifts to the trustees to show the reasonableness of the requirement." Id. The district court's finding on remand that the exclusion rate was excessively high is a finding of fact to be reversed only if clearly erroneous. See Miranda v. Audia, 681 F.2d 1124, 1127 (9th Cir.1982).
 
 
 6
 CLPT has posed three reasons the district court wrongly concluded that plaintiffs had shifted the burden to CLPT to demonstrate reasonableness. First, CLPT argues that the court used the wrong formula to calculate the percentage of workers excluded from the pension plan. Second, it argues that the court should not have admitted into evidence an incomplete Senate Interim Report on Welfare and Pension Plans. Third, it argues that this court's decision in Miranda, 681 F.2d 1124, found a higher exclusion rate to be reasonable, and thus that the exclusion rate in this case should be assumed reasonable, with no need to establish reasonableness by defendants.
 
 A. District Court Calculations
 
 7
 Plaintiffs presented expert testimony that the appropriate pool of potential beneficiaries was all workers on whose behalf employers had made contributions to the trust, whether or not they were "career laborers." The trial court chose to apply this formula rather than the one offered by CLPT, presumably because it found plaintiffs' witnesses more persuasive than CLPT's. That judgment is not clearly erroneous and thus is not vulnerable to reversal. See W.S. Shamban & Co. v. Commerce & Industry Insurance Co., 475 F.2d 34, 36 (9th Cir.1973).
 
 
 8
 CLPT did not contradict any of the specific figures which plaintiffs provided to the court. The district court thus had only one set of figures to consider. The district court expressed some hesitation about the precision of plaintiff's statistics, 582 F.Supp. at 1313-15, but in the absence of contrary relevant evidence from CLPT, accepted them as estimates. The final exclusion rate determined by the court was 94.3%. Id. at 1317. This was lower than the figure of 96% provided by plaintiff's expert witness, but was still high enough to be labeled "unusually" high by the court and thus unreasonable. Better figures may exist which would show the district court's factual conclusions to be clearly erroneous, but CLPT has not produced them at trial or on appeal.
 
 B. Admissibility of the Senate Report
 
 9
 CLPT maintains that admission of the Senate Interim Report as evidence of a national exclusion rate was prejudicial error. The trial court's admission of the materials is reviewed for abuse of discretion. M.A.P. Oil Co. v. Texaco Inc., 691 F.2d 1303, 1310 (9th Cir.1982).
 
 
 10
 Federal Rule of Evidence 803(8)(C) permits the admission of public reports "made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." CLPT argues that this particular report lacks trustworthiness by virtue both of the nature of material compiled and of the manner in which the compilation occurred.
 
 
 11
 It might have been error for the trial judge to accept the Senate Report statistics as proof of a disputed fact and rely completely upon the report in deciding that the CLPT exclusion rate was unreasonably high. We agree with plaintiffs, however, that the report was not offered as proof of an acceptable exclusion rate, but instead as one source of corroborative evidence for the testimony of one of their experts. The record reveals that the purpose for which the trial court considered the report was well within the court's discretion.
 
 
 12
 Paragraph 18 of the district court Findings of Fact echoes the Senate Report's conclusion that the average national exclusion rate was 92.5%. 582 F.Supp. at 1314. But the trial court's conclusion that the CLPT rate of 94.3% was unusually high was not based solely on a comparison with that national average. The court said: "In comparison to the average national forfeiture rate (92.5%) and on its face, an exclusion rate of 94.3% was unusually high." Id. at 1317 (emphasis in the original). Since both of plaintiffs' witnesses who testified on the question described 94.3% as unusually high, and CLPT did not rebut their testimony, CLPT has not shown that the trial court relied on the Senate Report to the prejudice of CLPT. Admission of the report was not an abuse of discretion.
 
 C. The Impact of Miranda v. Audia
 
 13
 Miranda does not stand for the proposition that exclusion rates of less than 96% automatically are acceptable. Such a holding would contradict the older Ponce I refusal to dictate an acceptable exclusion percentage. Rather, the Miranda court found that in the case before it, the trustees were able to show that their long vesting period and high exclusion rates were reasonable because of redeeming steps they had taken to relax eligibility conditions. 681 F.2d at 1126-27. The fact that the Miranda defendants were able to meet the burden after it shifted to them in no way affects the shifting of the burden to the Ponce defendants to show reasonableness in this case.
 
 II. REVIEWABILITY OF CLPT'S REASONING
 
 14
 In addition to quarreling with the district court's findings on the exclusion rate of CLPT's pension plan, CLPT believes that the district court did not have jurisdiction to review CLPT's reasoning for maintaining the 15-year vesting requirement, despite the Ponce I directive to do so. This is a question of law, subject to de novo review. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.), cert. denied, 464 U.S. 813, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 15
 There is no question that review of the trustee's rationale is within the district court's jurisdiction. See, e.g., Music v. Western Conference of Teamsters Pension Trust Fund, 712 F.2d 413, 416 (9th Cir.1983); Elser v. I.A.M. National Pension Fund, 684 F.2d 648, 652 (9th Cir.1982), cert. denied, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). There are, however, limitations as to the extent of that review; the court must allow trustees broad discretion. Their decisions will stand unless arbitrary and capricious. Id.; see also Sailer v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry, 599 F.2d 913, 914 (9th Cir.1979).
 
 
 16
 Once again CLPT incorrectly relies on Miranda. CLPT compares the factual underpinnings in Miranda to those here, including facts stipulated in this case which also existed in Miranda. CLPT suggests that because reasonableness was found in Miranda on those facts, it must be found here. As we have already said, however, the Miranda trustees' reasons for maintaining a 15-year vesting requirement were different from and more convincing than those of CLPT.
 
 
 17
 The chief justification for the vesting requirement in Miranda was the existence of provisions which loosened eligibility requirements despite the high exclusion rate. Those provisions were:
 
 
 18
 1. Lowering from 65 to 62 the age at which benefits could be obtained with 15 years of service;
 
 
 19
 2. Removing retirement age requirements completely for employees with 25 years service;
 
 
 20
 3. Relaxing standards for curing a "break in service";
 
 
 21
 4. Establishing national reciprocity agreements under which credited service with one local could be transferred to another.
 
 
 22
 681 F.2d at 1126.
 
 
 23
 Two of these provisions, the second and the fourth, were adopted by CLPT between 1962 and 1967.
 
 
 24
 The district court was instructed by this court to make its findings in light of CLPT's determination in 1970 not only to keep the 15-year vesting requirement but also to increase benefits to those who were eligible. 628 F.2d at 544. CLPT offered the following justifications for its decision:
 
 
 25
 a. CLPT's belief that employees who had accrued less than 15 years of credited service were not entitled to pension benefits;
 
 
 26
 b. CLPT's goal of providing sufficient income to pensioners to enable them to retire in comfort; and,
 
 
 27
 c. CLPT's goal of providing sufficient incentive to qualified employees to reduce employee turnover.
 
 
 28
 Ponce, 582 F.Supp. at 1318. CLPT maintains that by rejecting its justification for the high exclusion rate, the court substituted its judgment for that of the trustees, and imposed an unwarranted "best possible balance test" instead of examining the standard for reasonableness.
 
 
 29
 The trial judge dealt with each CLPT justification in turn. The first he dismissed summarily, 582 F.Supp. at 1318, but correctly. The trustees' belief that many people are not entitled to benefits is not the same as a decision to increase benefits to those who are eligible.
 
 
 30
 With regard to the second and third justifications, the trial judge found that the evidence did not support the contention that the exclusion rule forwarded CLPT's purported goals. Id. Nor does it; the parties' stipulations and the testimony presented at trial indicate that a number of factors contribute to the industry employment turnover rate. CLPT has not shown that its pension plan successfully has retained "career" laborers who would otherwise have left. In addition, this court has made it clear that providing more income to fewer recipients is not by itself an acceptable goal. Ponce I, 628 F.2d at 544.
 
 
 31
 CLPT's burden was to present a creditable justification for its long vesting requirement and high exclusion rate. Neither this court nor the district court would have to go so far as to substitute its judgment for that of the trustees to find CLPT had not met that burden.
 
 
 32
 III. APPLICATION OF UNITED MINE WORKERS HEALTH & RETIREMENT FUNDS v. ROBINSON
 
 
 33
 CLPT's final argument is merely a variation of its position that courts must not second guess the reasoning of trustees. In this version, CLPT urges that under United Mine Workers Health & Retirement Funds v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982) there is absolutely no reasonableness requirement in 29 U.S.C. Sec. 186(c)(5) (1982). This is an obtuse reading of Robinson, particularly in light of recent Ninth Circuit cases which have clearly construed Robinson otherwise.
 
 
 34
 The Supreme Court granted certiorari in Robinson to decide "whether [29 U.S.C. Sec. 186(c)(5) ] authorizes federal courts to review for reasonableness the provisions of a collective-bargaining agreement allocating health benefits among potential beneficiaries of an employee benefit trust fund." 455 U.S. at 564, 102 S.Ct. at 1228 (emphasis added). The Court of Appeals for the District of Columbia Circuit had found there was such a requirement. The Supreme Court reversed, explaining that the Court of Appeals had relied on cases in which, unlike in Robinson, trustees and not collective bargaining parties had full power to fix the eligibility requirements. Id. at 573, 102 S.Ct. at 1232. This circuit has consistently interpreted Robinson to have left intact a reasonableness requirement in situations where trustees maintained the independent rulemaking power not present in Robinson. Music v. Western Conference of Teamsters Pension Trust Fund, 712 F.2d 413, 417 (9th Cir.1983); Hurn v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry, 703 F.2d 386, 389 (9th Cir.1983); Harm v. Bay Area Pipe Trades Pension Plan Trust Fund, 701 F.2d 1301, 1305 n. 4 (9th Cir.1983).
 
 
 35
 CLPT tries to distinguish its situation by pointing out that its trustees sit by appointment, and at the pleasure, of the collective bargaining parties, and that the collective bargaining parties know of and approve all the trustees actions. CLPT has conceded that the eligibility requirement and benefit levels are nonetheless "promulgated by the Board of Trustees," but argues that Robinson does not require a showing that the collective bargaining parties have actually instructed the trustees to set particular standards. Robinson, however, does draw a line between rules which were the subject of bargaining and those which were determined by the trustees. 455 U.S. at 569, 573, 102 S.Ct. at 1230, 1232; see also Hurn, 703 F.2d at 389.
 
 
 36
 CLPT has not given any indication that the rules it promulgated were the subject of bargaining. Nor does it show how its relationship with interested collective bargaining parties is different from the relations present in Music, Hurn or Harm. Hurn makes it absolutely clear that even a specific requirement that the trustee's rules be ratified by the collective bargaining parties does not make those rules unreviewable under Robinson because "[i]ndependent approval by representatives of each side ... is not the equivalent of collective bargaining." 703 F.2d at 389.
 
 
 37
 Affirmed.