**Jack SHISHIDO, Plaintiff,**

v.

**SIU-PACIFIC DISTRICT-PMA PEN- SION PLAN, et al., Defendants.**

**No. C82–4776 SW.**

United States District Court, N.D. California.

Dec. 22, 1983.

Bruce A. Feder, Legal Assistance to the Elderly, Inc., San Francisco, Cal., Neal S. Dudovitz, Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., for plaintiff.

John F. Henning, Jr., John Paul Jennings, Victor C. Thuesen, Henning, Walsh & Ritchie, San Francisco, Cal., for defendant, Seafarers' Intern. Union of North America, Pacific Dist.

Dennis Daniels, San Francisco, Cal., John Paul Jennings, Henning, Walsh & Ritchie, San Francisco, Cal., for defendants SIU-Pacific District-PMA Pension Plan, Chester D. Hazel as administrator of the SIU-Pacific District-PMA Pension Plan.

## ORDER AND MEMORANDUM OF LAW

SPENCER WILLIAMS, District Judge.

This is an action brought by a retired merchant seaman to increase pension benefits. Cross motions for summary judgment were heard by this court on October 14, 1983. All parties having appeared at said hearing, written and oral arguments from all parties having been considered, and good cause appearing therefore, **IT IS HEREBY ORDERED** that defendant Pension Plan's Motion for Summary Judgment is **DENIED**; defendant Union's Motion for Summary Judgment is **GRANTED**; plaintiff's Motion for Summary Judgment is **DENIED** as to defendant Union and **GRANTED** as to defendant Pension Plan.

### SUMMARY JUDGMENT STANDARD

This action was submitted for decision on cross-motions for summary judgment. All parties have stipulated to a joint statement of facts (*hereinafter* "Joint Statement") which incorporates by reference the Pension Plan Agreement that forms the basis of controversy between plaintiff, the Pension Plan, and the Union.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56 (c). For purposes of Rule 56, stipulations entered into by counsel are deemed admissions. *See Gramm v. Lincoln*, 257 F.2d 250 (9th Cir.1958). Thus, where the parties agree on the material facts, and the dispute involving proper interpretation of statutes and regulations, the case can be resolved as a matter of law and summary judgment is therefore appropriate. *Smith v. Califano*, 597 F.2d 152, *cert. denied*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406.

In this case, part of the court's review involves construction of provisions set forth in the Pension Plan Agreement. Though inquiry into the contracting parties' intentions may present questions of fact, the preliminary question of whether any ambiguity exists in the contract is a question of law that may be summarily resolved by the court. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407.

After considering written and oral arguments related to the meaning of certain provisions set forth in the Pension Plan Agreement, discussed more fully below, the court finds that the agreement is unambiguous and presents no triable issue of fact. Based upon the Joint Statement and the Pension Plan Agreement, the court finds that summary judgment may, as a matter of law, be entered in favor of plaintiff against defendant Pension Plan.

### STATEMENT OF FACTS AND ISSUES

Mr. Shishido is a 64 year old retired merchant seaman who began working in the maritime industry in 1940 at the age of 21. He joined the National Union of Ma-

rine Cooks and Stewards (NUMCS) and obtained the required United States Merchant Mariner's Document from the United States Coast Guard at the inception of his 30 year maritime career.

Plaintiff worked continuously on Pacific Maritime Association (PMA) deep-sea vessels until 1951. During World War II, he accepted perilous duty on trans-Atlantic convoys which were subject to U-boat attack. At the conclusion of the war, President Truman issued a certificate commending plaintiff for his "courage and fortitude" in the war effort.

Without regard for plaintiff's documented courage and patriotism, the United States Coast Guard notified him on June 4, 1951 that Presidential Order No. 10173 rendered him ineligible to serve on deep-sea merchant vessels. Reflecting the political tensions of the period, plaintiff's Merchant Mariner's Document was revoked by the Coast Guard because his affiliation with allegedly subversive groups made his presence on board deep-sea vessels "inimical to the security of the United States."

This process of revocation for "security" reasons became known as "screening". As a consequence of being screened, plaintiff, and many others similarly situated, were forced to leave the maritime industry from 1951 to 1956.

In October 1956, the Ninth Circuit upheld a district court judgment which found the "screening" system to be an unconstitutional violation of due process. The court enjoined the Coast Guard from continuing the screening process and from instituting any other measure which would deprive seamen of employment opportunity without due process. *Lester v. Parker,* 112 F.Supp. 433 (N.D.Cal.1953), *remanded,* 227 F.2d 708 (9th Cir.1955), 141 F.Supp. 519 (N.C. Cal.1956), *aff'd.,* 235 F.2d 787 (9th Cir. 1956), *pet. for reh'g. denied,* 237 F.2d 698 (9th Cir.1956).

Upon reissuance of his Merchant Mariner's Document in 1957, plaintiff again sought work as a merchant seaman. However, plaintiff found that his former union, NUMCS, had been replaced with a rival union, defendant SIU-PD. As a result, he lost all his seniority and was ineligible for maritime employment in the Pacific region.

The collective bargaining agreement entered into between SIU-PD and PMA, in effect between 1955–58, provided that no seaman could sail in 1957 who was not eligible to sail on PMA ships in 1952. The agreement thus operated to exclude plaintiff, who had been unlawfully "screened-off" during 1952.

The collective bargaining agreement in effect between 1958–61 provided that the registration list of the SIU-PD union hall be closed as of 1956. Even this later agreement excluded plaintiff, who was not able to get on the 1956 registration list due to his previous ineligibility caused by the illegal "screening".

Plaintiff eventually received additional training in 1960 which provided him with enough seniority to ship-out until his disability retirement in 1976 at the age of 57. Upon retirement, plaintiff applied for pension benefits.

Despite plaintiff's 30 year maritime career, his application for a basic pension was denied and his claim for a Disability Pension was allowed only for the minimum amount of $125.00 per month.

The subject benefit plan was originally negotiated between PMA and SIU-PD in 1957. The most recent restatement of its terms is the Second Amended SIU Pacific District-PMA Pension Plan Agreement, attached as exhibit A to defendant Pension Plan's Answer and incorporated within the Joint Statement. The plan provides for a variety of pension programs but this action concerns only the Basic Pension and the Disability Pension.

The Basic Pension provides for a monthly benefit of $250.00 for seamen who have earned 20 years of Qualifying Time during a Qualification Period of 30 years. [Agreement, § 6.01 (a) at p. 28]. The Disability Pension provides a monthly benefit ranging from $125.00 to $250.00, depending upon length of service, to any seaman who has earned at least 10 years of Qualifying Time

during a Qualification Period of 25 years. *Id.* To be eligible for the maximum Disability Pension, a seaman must have worked at least 20 years in the 25 year period. *Id.*

A seaman's Qualifying Time includes not only his days in covered employment for which contributions were contemporaneously paid by the employer to the plan, but also his days at sea on PMA vessels prior to the Plan's inception in 1957. [Agreement, § 4.02(c), at p. 11, appendix E to Agreement at p. 1]. For example, plaintiff would be entitled to pension credit for his pre-1952 service if those years are included within his Qualification Period. *Id.*

Plaintiff's service record shows 9.075 years worked from 1940 to 1951. He accrued 12.62 years of Qualifying Time from 1961 to 1975. [Joint Statement of Facts, p. 8]. Defendant Plan found plaintiff eligible for a Disability Pension at the lowest rating of $125.00 a month based on 12.62 years of Qualifying Time accrued during a 25 year Qualifying Period extending from 1951 to 1976.

The Defendant Plan did not include the 9.075 years plaintiff worked between 1940 to 1951 because those years had not been worked within the 25 year Qualification Period of 1951 to 1976. Plaintiff was found not to have qualified for a Basic Pension because he had not earned 20 years of Qualifying Time during the Qualification Period extending from 1946 to 1976.

Plaintiff alleges that the trustee's refusal to modify the qualification period to take into account the 9.075 years he worked prior to being unlawfully screened is arbitrary and capricious conduct, clearly violative of the strict fiduciary duties imposed upon trustees by ERISA and Section 302 of the LMRA. Therefore, plaintiff seeks an order requiring the trustees to add the 9.075 years on to the 12.62 years of accrued Qualifying Time for a total of 22.37 years of Qualifying Time which would qualify plaintiff for total benefits of $250.00 per month.

In evaluating plaintiff's claims, we consider two issues: (1) whether defendant Pension Plan has the fiduciary duty to modify the Qualification Period to avoid an arbitrary or capricious denial of benefits and whether that duty has been violated; and (2), whether Defendant Union is liable to plaintiff for the amount of the maximum Disability Pension due to the alleged failure of the Union to represent adequately the interests of "screened" seamen when the collectively bargained Pension Plan was negotiated.

## I. PENSION PLAN

A. *Review of the Pension Plan Agreement, and its Application by the Pension Plan Trustees, Pursuant to Section 302(c)(5) and Section 502 of ERISA*

The Taft-Hartley Act (29 U.S.C. § 141, et seq.) governs the discretion of trustees in structuring and applying pension plan rules. Section 302 of the Act requires trustees to act "for the sole and exclusive benefit of the employees." This Section imposes on trustees the strict burden of fiduciary care, as defined by traditional equitable principles. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Each trustee bears an "unwavering duty of complete loyalty" to employees, *id.* at 329, 101 S.Ct. at 2794, and this duty "to trust beneficiaries must overcome any loyalty to the party that appointed him." *Id.* at 334, 101 S.Ct. at 2796. To this end, courts have "traditionally reviewed trust rules to ensure that they are not arbitrary and capricious, unsupported by substantial evidence, instituted in bad faith, or erroneous on a question of law. *Hurn v. Retirement Trust Etc. of So. Calif.*, 703 F.2d 386, 389 (9th Cir.1983).

The Employment Retirement Income Security Act (ERISA) (29 U.S.C. § 1001 et seq.) is a companion statute to the LMRA and essentially codifies the strict fiduciary standards that a pension plan trustee must meet under Section 302 of the Taft-Hartley Act. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 332, 101 S.Ct. 2789, 2795, 69 L.Ed.2d

672 (1981). The standard of review for actions taken by pension plan trustees is therefore the same, whether the action is brought under ERISA or Section 302 of the LMRA. *Id.; Gordon v. ILWU Pension Funds*, 616 F.2d 433, 438 (9th Cir.1980); *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301 (9th Cir. 1983).

### B. *Review of Pension Plan Provisions and their Application Is Not Foreclosed by Robinson*

Defendant Pension Plan contends that because the Pension Plan Agreement was reached as a result of collective bargaining, this court is without jurisdiction to determine whether the Pension Plan Trustees breached their fiduciary duty in refusing to modify the Qualification Period to take into account the nine years plaintiff worked prior to being unconstitutionally "screened" in 1951.

In *UMW Health and Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), the Supreme Court considered the question whether the § 302(c)(5) requirement that employee benefit trust funds be maintained for the sole and exclusive benefit of employees and their families authorizes federal courts to review for reasonableness the provisions of a collective bargaining agreement. The provisions at issue governed widow's health benefits. They were reached as the result of extensive bargaining following impasse on that issue; the compromise was found to be the only means available to avoid an imminent work stoppage. *Id.* at 567, 102 S.Ct. at 1230.

The Court noted that variations in benefit levels in such agreements are presumed to be the product of give and take in which all parties, including beneficiaries, are represented. *Id.* In approaching the question whether federal courts have jurisdiction to review such provisions, the Court distinguished provisions that had been the "subject of explicit, informed, and intense bargaining", *id.* at 569, 102 S.Ct. at 1231, from those established by trustees with "full authority to determine eligibility requirements and benefit levels." *Id.* at 573, 102 S.Ct. at 1233. Shutting off inquiry into the reasonableness of these former provisions, the Court noted "(a)s long as such conditions do not violate federal law or policy, they are entitled to the same respect as any other provisions in a collective bargaining agreement." *Id.* at 575, 102 S.Ct. at 1234.

■ Defendant Pension Plan insists that, under *Robinson*, its rules are eligible for protection from court review. We do not agree. In oral argument, counsel for defendant Pension Plan admitted that, unlike *Robinson*, no records of the collective bargaining negotiations exist in this case. Given the absence of such evidence, it is not possible to determine whether, as required by *Robinson*, the issue of "screened seamen" was the subject of "explicit, informed and intense debate" during the course of negotiations concerning pension plan eligibility requirements. *See Id.* at 569, 102 S.Ct. at 1231. We assume that there was no such debate on the issue of "screened seamen."

Moreover, even if the issue of "screened seamen" had been the subject of intense debate during the collective bargaining process, *Robinson* would not apply. In *Robinson*, the trustees and the Supreme Court were bound by the terms of a collectively bargained pension plan that did not allow for the exercise of any trustee discretion in determining pension plan eligibility requirements.

■ In sharp contrast, inspection of the pension plan agreement here discloses that the trustees have the authority to adopt procedural rules "extend(ing) the time fixed by this agreement for the performance of any act by a seaman where the seaman's failure to perform the act within the time otherwise required was due to absence from the country, physical or mental incapacity, **or other good cause.**" [Agreement, § 10.07 at 56]. (*emphasis supplied*). This discretionary authority is consistent with other sections of the agreement which authorize the trustees to ex-

**118**

tend the Qualification Period to compensate a seaman who has been absent consistently from covered employment due to illness, injury, or official duties. [Agreement, § 6.03(a)(1) at 36]. Though there is no provision specifically authorizing extension of the Qualification Period to compensate seamen who were unconstitutionally deprived of employment opportunity through the "screening" process, it is apparent that the trustees have authority to modify the Qualification period by virtue of the "other good cause" language set forth in Section 10.07 of the agreement.

This case is therefore similar to those cases cited in *Robinson* involving trustees vested with "full authority" to determine eligibility requirements. *Robinson* at 573, 102 S.Ct. at 1233. As to cases involving such trustee discretion, the Supreme Court left open the issue of whether courts retain jurisdiction to review Pension Plan eligibility requirements for compliance with the strict fiduciary duties mandated by ERISA and Section 302 of the LMRA. *Id.* at 573, n. 12, 102 S.Ct. at 1233, n. 12. Following *Robinson*, Ninth Circuit cases hold that federal courts do possess jurisdiction to review cases involving the exercise of trustee discretion in determining pension plan eligibility requirements for compliance with Section 302 of the LMRA and ERISA. *Hurn v. Retirement Fund Trust Etc. of So. Calif.,* 703 F.2d 386 (9th Cir.1983), *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301 (9th Cir. 1983).

As dictated by these Ninth Circuit cases, we turn to the derivation and application of the arbitrary and capricious standard used to review discretionary pension eligibility requirements.

C. *The Arbitrary and Capricious Standard of Review for Discretionary Rules*

■ The Ninth Circuit recently reiterated the appropriate standard for review of discretionary pension eligibility rules under Section 404 of ERISA and Section 302 of the LMRA. *Harm v. Bay Area Pipe*

*Trades Pension Plan Trust Fund,* 701 F.2d 1301 (9th Cir.1983). Under both ERISA and the LMRA, court review of discretionary pension plan eligibility requirements is guided by the strict fiduciary standards imposed on trustees to ensure that they establish and administer trust funds "for the sole and exclusive benefit of the employees." *Harm,* 701 F.2d at 1305; *Hurn,* 703 F.2d at 389.

Courts have attempted to balance the need for trustee discretion in administering pension plans to achieve maximum employee welfare against the need to enforce the fiduciary duties imposed on trustees by ERISA and the LMRA. *Hurn,* 703 F.2d at 389. To this end, courts have "traditionally reviewed trust rules to ensure that they are not arbitrary and capricious, unsupported by substantial evidence, instituted in bad faith, or erroneous on a question of law." *Id.*

■ An employee can show violations of these standards by establishing the exclusion of employees from pension plan benefits without justification. *Harm,* 701 F.2d at 1305; *Hurn,* 703 F.2d at 390. The exclusion of employees from pension benefits without justification creates a presumption that the pension plan is structurally defective. *Hurn,* 703 F.2d at 390; *Harm,* 701 F.2d at 1305. Pension plan trustees can rebut the presumption only by demonstrating a reasonable purpose for a rule which serves to exclude a disproportionate number of employees from pension benefits. *Hurn,* 701 F.2d at 390; *Harm,* 703 F.2d at 1305; *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 543–45 (9th Cir.1980).

■ A rule that denies pensions to employees who have worked a substantially greater time than others who received benefits also shifts the burden onto the trustees to show a rational relationship between the rule and the purposes of the fund. *Elser v. I.A.M. National Pension Fund,* 684 F.2d 648, 655–56 (9th Cir.1982). Neither may trustees adopt a rule that retroactively deprives employees of bene-

fits without providing an opportunity to comply with the new rule, *Burroughs v. Board of Trustees*, 542 F.2d 1128, 1131 (9th Cir.1976) or deprives them of vested benefits because of an involuntary break in employment. *Lee v. Nesbit*, 453 F.2d 1309, 1311–12 (9th Cir.1972).

Finally, in *Hurn,* the court invalidated a rule which authorized suspension of pension benefits for any former employee engaged in "employment or activity" in the construction industry. *Id.* The rule, as interpreted and applied by the *Hurn* trustees, served to suspend benefits belonging to a retired employee running for union office, despite his 25 years of accrued Qualifying Time. *Id.* Though the rule was not found to be arbitrary on its face, the court held that the interpretation and application adopted by the trustees was arbitrary and capricious in the absence of a genuine actuarial justification. *Id.* at 390. Since the trustees were not able to defend their interpretation of the rule as applied to Hurn, the court invalidated the rule. *Id.* at 390–91.

### D. *Application of the Arbitrary and Capricious Standard*

█ In this case, defendant Pension Plan offers no compelling actuarial justification for the trustees' refusal to exercise their discretionary authority to extend the Qualification Period to take into account the nine years plaintiff worked prior to being illegally "screened" in 1951. In the absence of evidence to the contrary, we find that the actuarial soundness of the Pension Plan would not be jeopardized by extending the Qualification Period to include all the 21.-695 years Shishido worked in the maritime industry so that he may qualify for maximum pension benefits of $250.00 per month.

In an attempt to justify their refusal to extend the Qualification Period, the trustees point to the fact that the Pension Plan Agreement provides for a qualification period of 30 years within which a seaman must earn only 20 years of Qualifying Time to obtain a Basic Pension. The trustees contend that the extra 10 years provided by the Qualification Period was added as a "grace period" designed to accommodate any unforseen circumstance, such as "screening", which might prevent a seaman from obtaining covered employment. *Id.* Therefore, the trustees argue, they are barred from extending the Qualification Period because the Plan is designed to accommodate plaintiff's situation and because there is no specific provision within the Plan that would grant the trustees independent authority to extend the qualification period. *Id.*

It is evident from the terms of the Agreement, however, that the Plan rules contemplate the extension of the Qualification Period when a seaman has been absent from covered employment as a result of some incapacity beyond his control. For example, Section 6.03(a) of the Agreement provides that the Qualification Period may be extended to compensate a seaman who has been continually absent from covered employment due to illness, injury or official union duties. More compelling is Section 10.07 which grants trustees discretionary authority to adopt procedural rules "extend[ing] the time fixed by this agreement ... **for other good cause.**" (*emphasis supplied*).

It is manifest that the drafters of the Agreement recognized that there could be extraordinary circumstances which would warrant extension of the Qualification Period beyond the 10 year grace period built into the plan. It would be inconsistent, illogical, and indeed, incredible to find that plaintiff's incapacity to obtain covered employment during the six years he was unlawfully screened because of unconstitutional government action does not fulfill the "other good cause" provision of Section 10.07.

Therefore, this court finds that the Trustees' failure to modify the Qualification Period to accomodate plaintiff's extraordinary situation was arbitrary, capricious, and in violation of the strict fiduciary standards imposed on pension plan trustees by ERISA and the LMRA. *Hurn v. Retire-*

*ment Fund Trust etc. of So. Calif.,* 703 F.2d 386 (9th Cir.1983); *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301 (9th Cir.1983). In keeping with the broad equitable powers of this court to enforce the strict fiduciary duties imposed upon pension plan trustees by ER-ISA and the LMRA, **IT IS ORDERED** that the Trustees add the 9.075 years plaintiff worked prior to being illegally "screened" on to his 12.62 years of accrued Qualifying Time. This provides plaintiff with a total of 22.37 years of Qualifying Time which qualifies him for either the maximum Disability Pension or the Basic Pension, with total monthly benefits in either case of $250.00 per month. This order is retroactive to 1976; unpaid accrued benefits from 1976 to date of judgment shall be paid to plaintiff in a lump sum.

## II. UNION

■ A. It is well established that a union, as the exclusive bargaining representative of employees within an industry or craft, has a statutory duty fairly to represent all such employees, both in its collective bargaining with the employer and in its enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842. This duty arises under both Section 8(b) of the National Labor Relations Act [29 U.S.C. § 158(b)] and under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185). *Id.* at 177, 188, 87 S.Ct. at 909, 915.

In the context of employee grievance procedures, a breach of the statutory duty of fair representation occurs only when the conduct of a union toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith. *Id.* at 190, 87 S.Ct. at 916. Outside the grievance procedure context, the Supreme Court has not required a person to be a member of a collective bargaining unit in order to have standing to sue for an alleged breach of the duty of fair representation.

For example, in *Steele v. Louisville and Nashville Railroad Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the Supreme Court addressed claims brought by a group of black railroad employees who alleged that the railroad union had breached its duty of fair representation by attempting to exclude them from membership in the union and from the railroad industry generally. *Id.* at 194–95, 65 S.Ct. at 228. The court held that, so long as a labor union assumes to act as the statutory representative of a craft, it cannot rightly refuse to perform the duty, which is inseparable from the power of representation conferred upon it, to represent the entire membership of the craft. *Id.* at 204, 65 S.Ct. at 232.

Thus "while the [Railway Labor Act, 45 U.S.C. §§ 151 et seq.] does not deny to such a bargaining labor organization the right to determine eligibility to its membership, it does require the union, in collective bargaining and in making contracts with the carrier, to represent non-union or minority union members of the crafts without hostile discrimination, fairly, impartially and in good faith." *Id.* To that end, the union is required to consider the views of non-union members of the craft during the course of collective bargaining negotiations and must provide such members with adequate notice and an opportunity to be heard on proposed union action. *Id.*

In the context of the National Labor Relations Act, the Supreme Court has also found that it is "not essential" that employees represented by a labor organization be union members. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1952). The bargaining representative, whether union or non-union, is responsible to, and owes complete loyalty to, the interests of all whom it represents, including non-union members of a craft. *Id.*

■ Thus, contrary to the assertions of defendant union, it is manifest that the Union owed a duty of fair representation to plaintiff, despite the fact that he was not a union member at the time the Pension Plan Agreement was negotiated. *Ford Motor,* 345 U.S. at 338, 73 S.Ct. at 686; *Steele,* 323 U.S. at 204, 65 S.Ct. at 232. This does not

mean, however, that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. *Steele*, 323 U.S. at 203, 65 S.Ct. at 232. Instead, "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor*, 345 U.S. at 338, 73 S.Ct. at 686.

For example, courts hold that variations in the terms of a contract based on differences relevant to the authorized purposes of the contract are the natural incidences of negotiation. *Ford Motor*, 345 U.S. at 338, 73 S.Ct. at 686; *Steele*, 323 U.S. at 203, 65 S.Ct. at 232. Acceptable variations may include differences in wages, hours, conditions of employment as well as how seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, injuries received in course of service, and time devoted to public service, whether civil or military. *Ford Motor*, 345 U.S. at 338–39, 73 S.Ct. at 686; *Steele*, 323 U.S. at 202–203, 65 S.Ct. at 232.

Given the broad discretion afforded bargaining representatives, this court finds that Defendant Union did not breach its duty of fair representation when it negotiated a Pension Plan Agreement which did not take into account plaintiff's status as a "screened" seaman [1]. Plaintiff has not demonstrated that the decisions made by the Union regarding either Pension Plan eligibility requirements or employment eligibility were motivated by race or some other suspect classification. *See Steele*, 323 U.S. at 203, 65 S.Ct. at 232. Instead, the Union appears to have exercised discretion in a legitimate manner during the course of negotiations. *See Ford Motor*, 345 U.S. at 338–39, 73 S.Ct. at 686. Therefore, we hold that summary judgment may properly be entered in favor of defendant Union.

**IT IS HEREBY ORDERED:**

1. Defendant Pension Plan's Motion for Summary Judgment is **DENIED**.
2. Defendant Union's Motion for Summary Judgment is **GRANTED**.
3. Plaintiff's Motion for Summary Judgment is **DENIED** as to Defendant Union and **GRANTED** as to Defendant Pension Plan.

**IT IS SO ORDERED.**

---

1. As discussed earlier, however, the fact that the Union did not breach its duty of fair representation at the time the Pension Plan Agreement was negotiated does not absolve the Pension Plan Trustees of the fiduciary duties imposed upon them by ERISA and the LMRA.